HIRAM O. MILLER *v.* BETSEY C. STEBBINS.

October Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, and
POWERS, JJ.

Opinion filed January 26, 1905.

*Promissory Note—Collateral Security—Pledgor's Right to
Collect—Forgery—Evidence—Payee's Poverty — Hus-
band and Wife—Husband's Interest in Suit—Wife as
Witness—Agency.*

A note pledged by the payee as collateral security cannot be collected
by him while it is so pledged, without first paying the sum thus
secured.

In an action on a note for $200 by the vendee of the payee against the
alleged maker, who claims the note to be a forgery, defendant will
not be allowed to show that at a certain time, while the payee
owned the note, his family was very destitute, his children needed
clothing, his family needed bedding, his neighbors furnished cloth-
ing for his children and bedding for his family, and his house
was hardly fit to live in; it appearing that, during all that time,
the note was pledged by the payee as collateral security for the
payment of a debt exceeding $100, and that the payee was a poor
man, pressed for money, and had all he could do to live.

The exceptions sufficiently show that the plaintiff paid valuable con-
sideration for a note, when it appears that the payee pledged
it to plaintiff as collateral security for a loan made to him by the
plaintiff, who also made other loans to the payee, relying on the
note as security, and who later purchased the note from the
payee.

When a note is sold by the payee for a valuable consideration, nothing
more appearing, the payee impliedly warrants that the note is
genuine and what it purports to be; and, therefore, the payee is
so interested in the event of a suit on the note by the purchaser
against the purported maker, who claims the note to be a forgery,
that the payee's wife is not a competent witness for the plain-
tiff.

A wife does not act as the agent of her husband within the meaning of
  V. S. 1241, so as to make her a competent witness in a suit in
  the event of which he is interested, when all that she did was done
  in his immediate presence and under his supervision and direction,
  and he could testify as fully as she could respecting the whole
  matter, although, because of his illiteracy, he could not do some
  of the things which she thus did at his direction.

ASSUMPSIT on a promissory note. Pleas, the general
issue, with notice denying the signature; and the Statute of
Limitations. Trial by jury at the March Term, 1904, Or-
leans County, *Haselton,* J., presiding. Verdict and judgment
for the plaintiff. The defendant excepted. The opinion fully
states the case.

*J. W. Redmond* for the defendant.

The evidence offered as to the poverty of Crawford and
his family should have been admitted. *Strong* v. *Slicer,* 35
Vt. 40; *Randall* v. *Preston,* 52 Vt. 108; *McDowell* v. *Mc-
Dowell's Est.,* 75 Vt. 404; *Downer* v. *Bowen,* 12 Vt. 452;
*Kimball* v. *Locke,* 31 Vt. 683.

*O. S. Annis* for the plaintiff.

Crawford could not have collected the note at the time
indicated by defendant's offer to show the poverty of Craw-
ford's family. The note was then pledged. Byles, Bills (6
Ed.) 5; *Blaney* v. *Pelton,* 60 Vt. 278; *Bank* v. *Adams,* 70
Vt. 132.

It does not appear that Crawford so transferred the note
to plaintiff as to make Crawford liable on an implied war-
ranty. It does not appear but what plaintiff purchased and
agreed to take all risks. Error will not be presumed. *Arm-
strong* v. *Noble,* 55 Vt. 428; *Gilchrist* v. *Hilliard,* 53 Vt. 592.

But, if Crawford was interested in the event of the suit, his wife was a competent witness, for she acted as his agent. He could neither read nor write. He could not write the note. She did what he could not do and so was his agent. That is the meaning of our decisions in the matter. When he is absent he could not do the act committed to her, because he was not present. Here he could not perform the act committed to her, because, though present, he could neither read nor write.

START, J.    The action is for the recovery of the amount claimed to be due upon a promissory note for the sum of two hundred dollars, dated October 15, 1896, payable to A. J. Crawford, or bearer, on demand, and purporting to be signed by the defendant.    The evidence of the plaintiff tended to show that the note was given for two hundred dollars loaned by Crawford to the defendant on the day the note purports to have been executed; that the defendant executed and delivered the note to Crawford on that day, and he held it until the spring or summer of 1897, when he turned it out to one George Miller as collateral security for the purchase price of some cows at that time purchased by him of Miller, and as collateral security for liability assumed by Miller in signing bank notes for him; and that Crawford continued to owe Miller, and Miller continued to sign notes with Crawford and continued to hold the note in question as such collateral security until Crawford let the plaintiff have the note, which was sometime in the winter of 1902-3.

The defendant's evidence tended to show that she did not sign the note; that she never borrowed any money of Crawford; and that she was never indebted to him.    The defendant offered to show that, during the fall of 1897 and the winter of 1898, Crawford's family was needy and very desti-

tute; that the children then needed clothing; that the family needed bedding; that his neighbors furnished clothing for his children and bedding for his family; and that his house was hardly fit to live in. The court excluded the offered evidence. In this there was no error. The note was not in Crawford's hands during any of the time covered by the offer of the defendant. It was then held by Miller as collateral security for the payment of an indebtedness exceeding one hundred dollars. Crawford could not collect the note while it was so held by Miller, without first paying the sum for the payment of which it was held as collateral security. The offered evidence, if it had been admitted, would have tended to show that Crawford's circumstances were such that he could not redeem the note. Also, it is stated in the exceptions, that it appeared that Crawford was, during this time, a poor man, pressed for money and had all he could do to live. This means that there was no controversy over the question of Crawford's poverty. It is clear that Crawford was not circumstanced so he could redeem the note and make it available for the support of his family; therefore, no legitimate inference could have been drawn from the offered evidence, against the validity of the note.

A. J. Crawford, the payee of the note, was produced as a witness by the plaintiff and, among other things, testified that, on the 15th day of October, 1897, the date of the note in question, the defendant came from her part of the house into his tenement and asked him to loan her two hundred dollars; that he consented to do so; that his wife was then present; that he could neither read nor write, but could write his name; that he instructed his wife to write the note in question; that his wife did then, in his presence and in the presence of the defendant, write the note in question; that his

wife, then in his presence, read said note to the defendant; that his wife then handed said note to the defendant in his presence; that the defendant then, in his presence and in the presence of his wife, signed the note in question. Said Crawford was shown the note in question on the stand and testified that he recognized the note, and that it was the same note that was signed as above set forth. He further testified that, after the defendant had thus signed the said note, he instructed his wife to get the money; that his wife then went into an adjoining bedroom and got the money and delivered. same to him. He further testified that he then counted out. two hundred dollars, handed same to his wife, and she handed. said amount to the defendant, who took it and departed with. it into her part of the house; that, after defendant had departed, he took the note in question and delivered same to his wife to keep.

After this testimony had been introduced, the plaintiff produced Mrs. Crawford, the wife of A. J. Crawford, as a witness, and, on the ground that she was the agent of her husband in doing the things testified to by him, and subject to the defendant's exception, she was allowed to testify to the same things testified to by her husband. In this there was. error. The husband was present and had personal knowledge of every material fact testified to by the wife. Every thing was done under his supervision, direction and in his immediate presence. He had personal knowledge of every thing that was said and done in the presence of the defendant, and, although he could not read and write, he could see and hear and was able to and did testify as fully as his wife did respecting all the circumstances attending the claimed loan of the money and the taking of the note. Under these circumstances, a wife is not the agent of her husband and is.

not a competent witness on the ground of agency, in a suit where the husband is interested in the result.   V. S. 1241; *Bates* v. *Sabin,* 64 Vt. 511, 24 Atl. 1013; *Pingree* v. *Johnson,* 69 Vt. 225, 39 Atl. 202.

The plaintiff's counsel insists that Crawford was not interested in the event of the suit, and that, irrespective of the statute allowing a wife to be a witness in matters intrusted to her by her husband, she was a competent witness; but the case shows that the husband was a party in interest.   The evidence, which in so far as appears was uncontradicted, showed that Crawford, in the winter of 1902-3 obtained the note from George Miller and immediately turned it out to the plaintiff as collateral security for a loan then made to him by the plaintiff; and that the plaintiff made other loans of money to Crawford, relying upon the note as security, until the following spring, when he purchased it of Crawford.   From this evidence, it sufficiently appears that the plaintiff paid a valuable consideration for the note; and that, if the note was a forgery, Crawford was holden to the plaintiff upon an implied warranty that the note was what it purported to be.   When a note is thus transferred by the payee, nothing more appearing, there is an implied warranty that the note is genuine and what it purports to be.   *Thrall* v. *Newell,* 19 Vt. 202; *Gilchrist* v. *Hilliard,* 53 Vt. 592; *Hannum* v. *Richardson,* 48 Vt. 508; *Labaree* v. *Wood,* 54 Vt. 452.

*Judgment reversed, and cause remanded.*